## MAGNOLIA PETROLEUM CO. v. FARMERSVILLE INDEPENDENT GIN CO. (No. 2592.)

(Court of Civil Appeals of Texas. Texarkana. June 14, 1922. Rehearing Denied July 1, 1922.)

1. Sales ⬤⇒71(4)—Buyer held entitled to at least minimum amount of oil stated in contract, whether necessary or not for use during term of contract.

Under a contract for sale of oil necessary to supply fuel and operate a gin for one year and "not thereafter," not to exceed a maximum of 20,000 gallons, and not less than a minimum of 15,000 gallons, which minimum the borrower contracted to take and the seller agreed it would supply "for such fuel purposes," the phrase "not thereafter" limited the maximum provision only, and the only limitation upon the minimum provision was the phrase "for such fuel purposes," so that the buyer was entitled to the 15,000 gallons minimum quantity whether such quantity was to be used during the contract term or not.

2. Appeal and error ⬤⇒747(3)—Cross-assignments of error not filed in trial court not considered.

Where cross-assignments of error were not filed in the trial court, as required by rule 101 (159 S. W. xi) for the government of district and county courts, it is not necessary to consider them on appeal.

### On Motion for Rehearing.

3. Appeal and error ⬤⇒835(2)—Contention raised first time in motion for rehearing not entitled to be considered.

In an action by a buyer against a seller for breach of contract to supply oil, a contention, made for the first time on motion for a rehearing, cannot be considered.

4. Evidence ⬤⇒84—Trial court held to have right to assume that buyer of goods paid market price.

In an action by a buyer against a seller for breach of contract to supply oil, in absence of evidence as to the price which the buyer had to pay for oil bought from other persons, the trial court had a right to assume that the buyer paid the market price for oil which it had to buy because of the seller's breach of contract.

Appeal from Collin County Court; T. O. Murray, Judge.

Action by the Farmersville Independent Gin Company against the Magnolia Petroleum Company. From judgment for plaintiff, defendant appeals. Affirmed.

July 28, 1919, appellant and appellee entered into a contract which contained stipulations as follows:

---

"Said seller [the petroleum company] hereby agrees to sell and deliver to said buyer [the gin company] and said buyer agrees to purchase and receive from the seller, between July 28, 1919, and July 28, 1920, the fuel oil necessary to supply fuel and operate gin during the term of this contract and not thereafter, not to exceed a maximum of 20,000 gallons which maximum the seller agrees to furnish and the buyer to take if required for said purposes, and not less than a minimum of 15,000 gals., which minimum the buyer contracts and guarantees it will take, and the seller agrees it will supply, for such fuel purposes; it being understood that the seller represents and contracts that the oil to be furnished hereunder is fit only for fuel purposes. * * * Buyer agrees to pay said seller for said oil, the purchase price of No. 1 Distillate 6 cents per gal. of Bessemer fuel 5 per gal. for each barrel of 42 gallons of oil furnished hereunder. * * * All shipments shall be made by the seller only upon written order therefor by the buyer."

In October, 1919, appellee ordered and appellant sent it a tank car containing 8,000 gallons of oil. June 25, 1920, appellee ordered two tank cars of 10,000 each of Bessemer fuel oil at the contract price of 5 cents per gallon. June 29, 1920, appellee changed the order, making it for one car of 10,000 gallons instead of for two. Appellant refused to fill the order. At the time it was given and appellant refused to fill the order the market price of Bessemer fuel oil was 12 cents per gallon. The suit was by appellee to recover of appellant $750 as the amount of the damages sustained by the former as the result of the alleged breach of the contract by the latter when it refused to fill the order.

It also appeared from testimony that appellee had between 3,000 and 4,000 gallons of oil on hand at the beginning of the 1919–1920 ginning season, which commenced about September 1, 1919, and ended about January 1, 1920. Appellee used about 10,000 gallons of fuel oil in operating its gin during that season, and had between 1,500 and 2,000 gallons on hand at the end thereof. The order of June 25, 1920, for two tank cars of 10,000 gallons each was made by appellee at the instance of one Kimbrough, appellant's traveling selling agent, who advised appellee it was entitled to that much oil under the contract. The change in the order was made because appellee's manager and appellant's local agent at Farmersville (where appellee's gin was located and where the oil was to be delivered) concluded that appellee was not entitled to as much as 20,000 gallons under the contract. July 1, 1920, appellant wrote appellee, acknowledging receipt of the order for two tank cars of 10,000 gallons each, and declining to accept it, giving as the reason that, whereas appellee had agreed to buy of appellant the fuel oil it used in operating its gin during the fall of 1919, it had not done so, thereby breaching the contract. July 3, 1920, appellant wrote appellee, acknowledging receipt of the order "for 10,000 tank car oil Bessemer fuel on contract at .05," and adding, "We expect to make immediate shipment." August 7, 1920, appellant again wrote appellee, saying its record showed the purchase by appellee of a car of oil under the contract of October 25, 1919, and therefore that the statement in its letter of July 1, 1920, that appellee had not in the fall of 1919 purchased any oil under the contract was error, and adding:

"However, you will see that this contract covers fuel for the actual operation of your gin up to July 28, 1920, only, for which reason we again advise that the order will not be accepted or shipment made."

Appellee ordered the 10,000 gallons, which appellant refused to ship, expecting to store same and use it in the operation of its gin as it needed it and after July 28, 1920.

The trial court construed the contract as one binding appellant to furnish appellee at least 15,000 gallons of oil, "conditioned only that it should be used for fuel purposes, which condition was fully met," and rendered judgment in appellee's favor for $490, the difference between the value of 7,000 gallons of oil at 5 cents per gallon, the contract price, and at 12 cents per gallon, the market price at the time appellant breached the contract.

W. H. Francis, A. S. Hardwicks, and Louis V. Greer, all of Dallas, for appellant.
H. L. Davis, of McKinney, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The only contention presented by the assignments which we think presents a debatable question is the one that the trial court erred when he construed the contract as binding appellant to furnish appellee for fuel purposes at least 15,000 gallons of oil between July 28, 1919, and July 28, 1920. Appellant's view is that the contract bound it to furnish only the oil necessary for fuel (not exceeding 20,000 gallons) in the operation of the gin *between* said dates, and did not bind it to furnish any oil between those dates for use by appellee as fuel after July 28, 1920.

Asserting that the contract is an unambiguous one, and that the intention of the parties therefore must be determined from the language they used in making it alone, appellant argues that the provision that it was to sell and appellee to receive between the dates specified "the fuel oil necessary to supply fuel and operate gin (not to exceed 20,000 gallons) during the term of this contract and not thereafter" supports its view of the contract.

It may be conceded that if the language quoted was all it is necessary to consider in arriving at the intention of the parties, the contention should be sustained. But it is not all; for the clause in the contract following the one quoted bound appellee to take "for such fuel purposes" not less than 15,000 of the 20,000 gallons specified as the maximum amount appellant was to furnish. Appellant argues that the words "for such fuel purposes," when considered in connection with the provision in the preceding clause that appellant was to sell and appellee to receive of it the fuel oil necessary to operate the gin during the term of the contract "and not thereafter," meant that appellant was not to be bound to sell nor appellee to buy the 15,000 gallons or any part of same unless it was necessary for use as fuel in the operation of the gin between July 28, 1919, and July 28, 1920. We do not agree that the words meant that. It is easy to understand why the parties should have stipulated that the oil to be furnished under the contract should be used for fuel purposes only, but we see no reason why they should have been concerned about whether it was so used during the life of the contract or afterward. It is reasonably plain, we think, looking to all the language used by the parties, the intention was to bind appellant to sell to appellee and appellee to buy of appellant all the fuel oil, not exceeding 20,000 gallons, used by appellee in operating its gin between the dates specified, and, without reference to whether it used it during that time or not, to bind appellee to buy of appellant and appellant to sell to appellee for fuel purposes as much as 15,000 gallons of oil.

As supporting its view of the contract appellant cites Cullinan v. Power Co. (Tex. Civ. App.) 65 S. W. 689; Refining Co. v. Mercantile Co. (Tex. Civ. App.) 164 S. W. 1113, and Holland v. Oil Association (Tex. Civ. App.) 171 S. W. 1075—all of which we have examined and none of which we regard as of any value in determining the question presented by the record in the instant case.

[2] In a cross-assignment in its brief appellee insists that it was entitled to recover the difference between the contract price and market price of the entire 10,000 gallons ordered instead of only 7,000 gallons thereof as determined by the trial court, and that the court therefore erred when he rendered judgment in its favor for only $490. The judgment, it insists, should have been in its favor for $700. As it does not appear from the record that the cross-assignment was filed in the court below as required by rule 101 (159 S. W. xi) for the government of district and county courts, appellee is not entitled to have it considered. Morrison v. Brooks (Tex. Civ. App.) 189 S. W. 1094.

The judgment is affirmed.

### On Appellant's Motion for Rehearing.

[3, 4] The contention that, construing the contract as the trial court and this court construed it, appellee nevertheless was not entitled to recover anything of appellant because it appeared the oil was to be furnished for fuel purposes only, and did not appear that appellee paid more than 5 cents a gallon for the oil it purchased for such purposes from other parties, is made for the first time in the motion. Therefore appellant is not entitled to have it considered, but if it was considered the contention would be overruled; for we think the trial court had a right to assume that appellee paid the market price, shown to have been 12 cents a gallon, for the oil it so purchased.

The motion is overruled.

### On Appellee's Motion for Rehearing.

Appellee calls attention to the fact (overlooked by us) that its cross-assignment, referred to in the opinion disposing of the appeal, was filed in the trial court, as was shown by the certificate of the clerk of that court attached to one of the copies of the brief filed here. We have considered the cross-assignment, and overruled it. We think the conclusion of the trial court that appellee was entitled to have appellant furnish it at the contract price of 5 cents a gallon only 7,000 gallons of fuel oil in addition to the 8,000 gallons it had furnished was correct.

The motion is overruled.