**CORSICANA COMPRESS CO. v. MAGNOLIA PETROLEUM CO. (No. 988.)**

(Court of Civil Appeals of Texas. Beaumont. June 15, 1923. Rehearing Denied June 27, 1923.)

1. Sales ⬳71 (4)—Buyer held entitled to minimum quantity specified whether necessary during contract term.

Under ·a contract for the sale of fuel oil necessary to supply fuel and operate a compress for one year not to exceed a designated maximum and not less than a specified minimum, held, that the buyer was entitled to delivery of the specified minimum whether such quantity was to be used during the contract term or not.

2. Appeal and error ⬳1175(6)—Where evidence undisputed, appellate court will render proper verdict.

In an action for damages for breach·of a sale contract, where the evidence was not in dispute and the contract not ambiguous, the appellate court, under Rev. St. art. 1626, will render the judgment on·reversal that should have been rendered by the court.below.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by the Corsicana Compress Company against the Magnolia Petroleum Company. Judgment for defendant, and plaintiff appeals. Reversed, and rendered.

Richard Mays, of Corsicana, for appellant.

W. A. Tarver, of Corsicana, and A. S. Hardwicke and W. H. Francis, both of Dallas, for appellee.

O'QUINN, J. This controversy grew out of a contract for the sale of fuel oil. On June 18, 1919, appellant and appellee entered into a contract, which contained the following:

"Said seller· hereby agrees to sell and deliver to said buyer, said buyer agrees to purchase and receive from the seller, between June 17th, 1919, and June 17th, 1920, the fuel oil necessary to supply fuel and operate a compress during the term of this contract and not thereafter, not to exceed a maximum of 4,000 barrels, which maximum the seller agrees to furnish and the buyer to take if required for said purposes, and not less than a minimum of 3,000 barrels, which minimum the buyer contracts and guarantees it will take and, the seller agrees it will supply, for such fuel purposes; it being understood that the seller represents and contracts that the oil to be furnished hereunder is fit only for fuel purposes. * * * Buyer expressly agrees to pay said seller for said oil the purchase price of $1.00 per barrel for each barrel of forty-two (42) gallons of oil furnished hereunder, from which said purchase price shall be deducted the proper cost of transportation paid as aforesaid by said buyer. * * * All shipments shall be made by the seller only upon the written orders therefor by the buyer."

It is shown that appellant delivered. 943.65 barrels, for which appellee paid the contract price. On June 4, 1920, written demand was made by appellant upon appellee for further compliance with its contract to furnish oil, which was refused by appellee, on the grounds: (1) That appellee had furnished all the oil that was necessary for the operation of the compress for the period of time the contract was to run; (2) that appellant desired the oil demanded for future use, that is, to be used after the contract had expired; and (3) that the contract only called for oil

to be supplied in such amount as was needed to operate the compress between June 17, 1919, and June 17, 1920, and not thereafter. At the time the last order was given for oil, which the appellee refused to fill, the price of fuel oil had advanced from $1.00 per barrel to $3.00 per barrel. It is not shown whether appellant had any oil in its tank when the first oil under the contract was delivered, but there was a small amount, some 40 barrels, on hand at the time the last order was given, but appellant had to substitute coal for fuel for a few days before the contract expired. The greater portion of the oil last ordered would have been held in storage by appellant and used in the operation of the compress after the contract had expired. There is no contention that appellant desired the oil for any purpose other than to be used as fuel in the operation of its compress.

This suit was brought by appellant to recover damages at the rate of $2.00 per barrel for the oil not furnished under the contract. The case was tried before a jury, and the court, construing the contract to bind appellee to furnish appellant only with the amount of oil necessary to operate the compress for and during the time between June 17, 1919, and June 17, 1920, which had practically been done, at the conclusion of the evidence instructed the jury to return a verdict for appellee.

Appellant presents a number of questions, but we think the proper construction of the above-quoted contract is controlling.

Appellee contends that under said contract, it undertook to furnish appellant only the amount of fuel oil necessary to operate its compress from June 17, 1919, to June 17, 1920, limited to a maximum amount of 4,000 barrels, and not to supply oil to be used in its operations after the expiration of said period of time, and that, as the oil demanded was not required for said purpose, then, under the contract, appellee was not bound to furnish same. Appellant contends that the use of the oil by appellant for fuel purposes within the stated period of time was incidental and not controlling. That the limitation mentioned in the contract related solely to the maximum amount to be furnished, 4,000 barrels, if required for fuel purposes in the operation of the compress and not for speculative or other purposes, but that there was no limitation whatever as to the minimum of 3,000 barrels, other than its incidental use as fuel to operate the compress, for in that the contract expressly provided that for such purpose appellant was, at all events, obligated to buy and pay for a minimum of 3,000 barrels, "which minimum the buyer (appellant) contracts and guarantees it will take, and the seller (appellee) agrees it will supply."

Appellee insists that the expression "said seller hereby agrees to sell and deliver to said buyer and said buyer agrees to purchase and receive from the seller, between June 17, 1919, and June 17, 1920, the fuel oil necessary to supply fuel and operate a compress during the term of this contract and not thereafter," shows, unquestionably, that oil was to be furnished for fuel to operate the compress during the term of the contract only—that is, that the oil furnished was to be actually used, burned, during that time—and that said language is not limited by anything that follows in the contract. It is urged that notwithstanding the subsequent clause, which obligates the purchaser to take and pay for "not less than a minimum of 3,000 barrels, which minimum the buyer contracts and guarantees it will take, and the seller agrees it will supply, for such fuel purposes," that the last expression, "for such fuel purposes," was intended to and did limit the amount of fuel to be supplied in any event to the bare necessities of the plant for and during the contract year—the amount of oil actually used—insisting that said words, "for such fuel purposes," referred to the sentence above, which says: "Fuel oil necessary to supply and operate a compress during the term of this contract, and not thereafter," and has the effect of repeating said clause after the minimum provision.

[1] We cannot agree with appellee in this contention. We think the case is ruled by the case of Magnolia Petroleum Co. v. Farmersville Independent Gin Co., 243 S. W. 568. The Texarkana Court of Civil Appeals there construed a contract made by appellee here identical with the terms of the contract here in controversy, differing only in dates and quantities. We take it that the contract there and the one here were made upon the same form of blank contract that the record discloses is used by appellee. In that case, Chief Justice Willson held against the very contention here urged by appellee, and construed the contract to mean that the contract as to the minimum statement was absolute and not controlled by the limitations urged. If it was the intention of the parties to contract for such an amount of oil only as was needed to supply fuel for operating the compress for one year, why name any number of barrels, at all, either a maximum or a minimum? Frequently contracts to supply commodities are made between parties for the amount of their necessities for a stated time, which are limited to a maximum amount to be furnished; but, if the contract contemplates the supply to be the full amount that may be needed by the purchaser, why should there be a minimum stated? If the parties contracted with that view, why the guaranty clause obligating the purchaser to take and pay for a minimum amount? If it was not the intention of the parties to fix a minimum quantity to be bought by appellant and delivered by appellee, at 3,000 barrels, it was useless to write into the contract the language, "and not less than a minimum of

3,000 barrels." Why not, if a maximum was desired to be fixed, have named the maximum and then added: or such amount of such oil as purchaser may require for operation of said compress for said time? It may be that one party would be willing to contract to supply a commodity to the extent of the necessities of the other party for a stated time, but for reasons of prudence, either as to their capacity to produce and supply or as to fluctuations of the market, would not be willing to contract for more than a certain amount, which in that event may be stipulated as the maximum amount to be expected under the contract, but to say that all needed will be supplied, and then fix a minimum as to that amount, which might be less than actually required, would be absurd. Paraphrasing the language of Chief Justice Willson, in Magnolia Petroleum Co. v. Farmersville Independent Gin Company, supra, it is clear, we think, looking to all the language used by the parties, that the intention was to bind the appellee to sell to appellant, and appellant to buy from appellee, all the fuel oil, not exceeding 4,000 barrels, used by appellant in operating its compress between the dates specified, and, without reference to whether it used it during that time or not, to bind appellant to buy from appellee and appellee to sell and deliver to appellant for fuel purposes as much as 3,000 barrels of fuel oil.

Appellee cites us to Moore v. Paris Oil & Cotton Co., 9 Tex. Civ. App. 27, 29 S. W. 821; Cullinan v. Power Co. (Tex. Civ. App.) 65 S. W. 689; Refining Co. v. Mercantile Co. (Tex. Civ. App.) 164 S. W. 1113; and Holland v. Oil Association (Tex. Civ. App.) 171 S. W. 1075—as supporting its interpretation of the contract. We have carefully examined each of said authorities, but do not think either of them in point.

[2] That the cost of fuel had advanced $2 per barrel is not denied. The parties each insist that the contract is not ambiguous, and that it was the duty of the court to construe same, but differ as to the construction to be given. We agree that the contract is not ambiguous, but think the court erred in his construction of it. Therefore, as there is no ambiguity in the contract, and as we have construed same to mean that appellant was, in any event, to purchase and appellee to deliver 3,000 barrels, and as the measure of damages, the difference between the contract price of the oil per barrel and the price at the time appellee refused to furnish oil, was definitely ascertained, judgment below should have been rendered for appellant for the difference between 3,000 barrels and 943.65 barrels, the amount delivered, at $2 per barrel, amounting to $4,112.70. Under article 1626, R. S., it is the duty of this court to render the judgment here that should have

been rendered by the court below. Therefore the judgment of the court below is reversed, and judgment is here rendered for appellant in the sum of $4,112.70.

Reversed and rendered.